## WESLEY *vs*. THE STATE OF GEORGIA.

1. Where the record is so confused or imperfect that an alleged error cannot be passed upon, it will not be considered.
2. That an indictment states that the grand jurors were "sworn, chosen and selected," is no ground for quashing it.
3. Although a juror may appear to be competent when put upon his *voir dire*, and may have been sworn in chief, still he can be proved incompetent and rejected.
4. On a trial for rape it is essential to show, either by direct or indirect evidence, actual carnal knowledge.   This not being shown in the present case, the verdict is contrary to law.

Criminal Law.   Practice in the Supreme Court.   Jurors. Verdict.   Before Judge LESTER.   Cobb Superior Court. November Adjourned Term, 1879.

Reported in the decision.

C. D. PHILLIPS; W. P. McCLATCHY, for plaintiff in error.

v 65—47

R. N. ELY, attorney-general; THOS. F. GREER, solicitor-general, for the state.

CRAWFORD, Justice.

The plaintiff in error, who was convicted of rape at the November adjourned term, 1879, of Cobb superior court, and to whom a new trial was refused, comes before us and says that the judgment of the court below was illegal because—

1. The grand jury finding the bill of indictment was not drawn according to law.

2. The court should have quashed the indictment on the ground that it read, "the grand jurors sworn, chosen and selected," instead of "selected, chosen and sworn."

3. One of the jurors, after having qualified himself and been sworn in chief, was permitted, on motion of the solicitor-general, to show that he was disqualified, and therefore set aside for cause.

4. The verdict is contrary to the evidence and without evidence to support it, and so strongly against the weight of evidence as to shock the moral sense.

1. Upon the first ground taken, we have to say that an examination of the record does not show satisfactorily to this court, from the minutes of the superior court of Cobb county, exactly what the judge did touching the adjournment from the regular to the adjourned term, although the minutes of the adjourned term show that its opening was legal and regular. We will not rule upon this point, from what appears to be an incomplete record, as well as because we are of opinion that a new trial should be granted upon another point in the case.

2. Should the court have quashed the indictment because the solicitor-general reversed the order of the words from "selected, chosen and sworn" to "sworn, chosen and selected"? We do not think that such transposition would render the indictment so defective as to justify its being quashed.

3. The third ground makes the question as to whether a juror who upon his *voir dire* has shown himself competent, been accepted and sworn in chief, can afterwards be set aside for cause.

The importance of having a juror who is competent under the law, in all respects, to try a party charged with crime, is universally recognized; whenever, therefore, it is discovered that there is one on the panel who is incompetent, and the same was unknown to the parties or the counsel whilst his qualification was being ascertained, and no testimony has been submitted to the jury, it is right and proper that he should be set aside and another chosen. This principle has been ruled by this court in *Jackson vs. The State*, 51 *Ga.*, 408; 45 *Ib.*, 11.

4. The last ground relied upon is that the verdict is contrary to evidence and without evidence to support it.

The charge against the accused was rape, that is, the carnal knowledge of a female (Mrs. Fox) forcibly and against her will. A thorough examination of the testimony fails to show the fact that he did have any *actual* carnal knowledge of this woman. Circumstances are quite sufficient in law to authorize a verdict of guilty against one charged with crime, but in all cases the *corpus delicti* must be established, either by positive or by indirect testimony. In most cases tried by the courts, to show the commission of the crime itself is the first step, and no conviction can occur until this is done; as in murder, a homicide is shown, in burglary, the breaking and entering with felonious intent, in robbery or larceny, that something has been stolen, and in rape, that carnal knowledge of a female forcibly and against her will has taken place. In this case, as in all others, the verdict may go to the utmost limit of the proof, but that which the main and only witness did not know, the jury cannot know. A witness may testify to the criminal conduct of a party, and if believed it warrants a conviction for *the crime* which was shown to have been committed, but for none other,

and especially for none other of a higher grade in turpitude or punishment. Mrs. Fox testifies to much criminal conduct, and earnest effort on the part of the accused, and a stout resistance on her own, but she adds that she became unconscious, and " I do not know what was done to my person no more than if I had been buried ten feet under the ground."

This being the only testimony as to any actual rape having been committed, we do not think there is sufficient proof to justify the verdict. Had Mrs. Fox testified to any condition of her person indicating cohabitation, or such carnal connection even by the accused with her person as the law defines to be rape, then the case would be different, but the distinction between rape and the attempt to commit it, or between either and innocence, is great and vital both in fact and in law. The want of testimony constrains us to award a new trial.

Judgment reversed.